NelsoN, J.,
delivered the opinion of the court.
These causes, having been consolidated and heard together in the Chancery Court at ' Athens, were brought to this court by appeals granted to all the parties. They grew out of the last will and testament ot Thomas Trew, deceased, and certain proceedings alleged to have been had under it in the County Court of McMinn county. The objects of the bill of Queener and wife are to relieve Queener from a judgment rendered against him upon certain notes executed for a slave sold under the direction of the ^County Court on the ground that said sale was not, as he alleges, confirmed by the Court; to set aside for the same reason the sale of a tract of land, and to have the same resold or partitioned, and also to *63 obtain an account from the executor, and a final settlement of the estate. Perry Trew purchased the lands at a sale made by the County Court Clerk, and William Trew afterwards became jointly and equally interested with him in the purchase, and the objects of their cross bill are to enjoin the collection of the judgments for the purchase money until their rights are ascertained, to obtain a confirmation of the sale of the lands, ' if necessarry, and to compel the purchasers of the slaves to account for the amounts of their notes executed at the sale. Warren Trew, the purchaser of another slave sold at the sale, while insisting upon the validity of the sales of the lands and slaves, filed his cross bill to enjoin the collection of the judgment against him for the purchase money of the slave bought by him until the rights of all the parties are adjudicated.
The record shows that Thomas Trew departed this life on the 23d of June, 1862, having previously made his last will and testament, and that William Trew was duly qualified as his executor at the July Sessions, 3862, of the County Court of McMinn. Among the peculiar provisions of his will, it is directed that if his wife, Nancy, survives him, she shall be allowed the use and enjoyment of one-third of all his real and personal estate, including the homestead, together with all the appurtenances thereunto belonging, during the term of her natural life, to be set apart and allotted to her by the County Court of MoMinn cownty as the law prescribes; application for said allotment to be made and attended to by his executor thereinafter named; and *64 at her death said one-third of all his personal and real estate to be distributed equally among his nine legatees, the children and grandchildren described in the will.
So much of the second clause of the will as is material to be here noticed is as follows: “It is my will and desire that all my real and personal estate, after the above allotment is made in the manner above described, and after all my just debts and funeral expenses are paid, shall be distributed equally among the following named persons, each to share alike, to wit, Eliza Queener, wife of James C. Queener,” etc. — the first named seven being children, and the last two' named being, as the will recites, grandchildren.
The third clause is in the following words: “It is my will and desire that William Trew be and is hereby appointed executor of this my last will and testament, and it is my will and desire that he faithfully execute the same.”
Commissioners were appointed at the July Sessions, 1862, of the County Court to lay off and set apart to the widow one-third part of the real estate and personal property; and they assigned to her seventy acres of the land as “dower” valued at $2,333.33|-, and the sum of $1,688.29, being one-third in value of the personal property, including slaves. Their report was confirmed by the County Court at November Term, 1862.
On the 21st August, 1862, all the legatees, except the two minors, filed their petition in the County *65 Court for the sale of three slaves belonging to the estate, on the ground that partition could not be made of them; and a decree was pronounced on the 1st September, 1862, directing the clerk to sell them on a credit of twelve and eighteen months. On the 19th September, 1862, all the legatees, except the widow and the two minor grandchildren, filed a bill or petition in the County Court, praying for a sale, in place of partition, of all the lands except the widow’s “dower”; and it appearing from the clerk’s report that partition could not be made, the same were ordered to be sold in a decree pronounced by the County Court on the 7th October, 1862.
The clerk reported the sale of the land and slaves to the County Court at the November Sessions, 1862, from which it appears that the lands were sold to William and Perry Trew for $3,250; a negro boy Jerome, to Warren Trew for $1,600; a negro boy Joseph, to James C. Queener for $900: and a negro woman, Rhoda, to Benjamin Mayfield for $108. Ten per cent, of the purchase money was paid in hand, and notes at twelve and eighteen months executed for the residue of the purchase money as stated in the clerk’s report. Judgments were rendered upon the notes in favor of Thomas Hale, successor of the former clerk, on the 6th of August, 1866, in said County Court, and the bill of Queener and wife was filed 25th of August, 1866.
The original bill was probably filed under a misapprehension as to some of the facts, growing out of the circumstance that part of the papers constituting *66 the record were missing. These were found and supplied before the Chancellor on a petition for rehearing, and it now satisfactorily appears that process was duly served, and a guardian ad litem properly appointed for the minors, who were regularly made defendants to both petitions in the County Court, and that all the proceedings were regular, with the exception that the name of Queener was not joined with that of his wife for the sale of the lands and slaves, and that it does not appear that there was any decree of confirmation. It is asserted in the answer that some of the records were mutilated by soldiers during the late civil war, and that there was a decree of confirmation; and this is quite probable, although there is no satisfactory proof of the fact.
Assuming, for the' present, that the County Court had jurisdiction upon the facts disclosed in the record to pronounce the decree in favor of the widow and to order a sale of the lands and slaves, we hold that, as it clearly appears that the purchasers of the slaves took and held the undisturbed possession of them under the sale, no decree of confirmation was necessary; and the fact that they were emancipated under the amended Constitution of 1865, or by act of war, before judgments were rendered for the purchase money, ‘ did not exonerate the purchasers, and they should bear the loss.
This question was substantially determined by this court in an opinion delivered by Judge Wright, at Nashville, in December, 1860, a certified copy of which is before us, and which is reported, but without the *67 name- of tbe Judge who delivered the opinion, in 5 Col., 390. That case was referred to and ordered to be published, in the opinion delivered by Judge Milligan in Polk v. Pledge, 5 Col., 384. Both opinions are fully sustained by reason and authority, and no further citation of authorities is necessary.
It may be added, that if any confirmation of the sale of the slaves was requisite to pass the title after possession was taken under the purchase, it was the duty of the purchasers to make application therefor to the County Court, and they can not take advantage of their own laches in failing to do so. See Deaderick v. Smith, 6 Hum., 146; Whiteside v. Latham, 2 Col, 92.
On the hypothesis assumed in the argument of the counsel for Queener and wife, that Mrs. Queener was, under the will, one of the joint owners of the slaves and lands, it was not, upon the facts of this case, essential that the name of her husband should have been associated with hers in the petition for sale. The rights of married women are very considerably enlarged by the Code, art. iii., pp. 487, 488, and especially ss. 2483, 3319 and 4052. "Without deciding that these sections authorized Mrs. Queener to sue as a feme sole, they are adverted to for the purpose of showing that the objection is more a matter of form than of substance, and as her husband in the character of purchaser became a quasi party to the proceedings, it is to be presumed that he had full knowledge of their nature, and is estopped to deny that they were conducted by his authority or to affirm *68 that be should have been made a party in more solemn form.
It is abundantly shown by the pleadings and proofs that all the parties in interest, except Queener and wife, are satisfied with the proceedings in the County Court, and the purchasers of the land pray that the sale to them shall be confirmed. It is shown that the sales of the land and slaves were highly advantageous to the interests of the minors, and that partition of the land and slaves could not have been properly made. No question is made as to the jurisdiction of. the County Court, and it probably existed and was rightfully exercised, under the Code, ss. 2246, 3262 and 3263. It clearly existed as to the slaves, and if under the provisions of the will any doubt exists as to whether partition of the lands could be made in the County Court under the statute, there can be no serious question that the inchoate sale maybe perfected by a decree of this court, especially as its confirmation is desired by the executor and the purchaser, and there is no evidence of unfairness in the sale. Under a proper construction of the will it was not absolutely necessary for the executor to invoke the assistance of any court to enable him to effect a sale, but as a trustee he had the right for his- own protection to ask the aid of a court of equity in the first instance, and having become interested in the purchase of the land, it was proper for him and his co-purchaser to pray for a confirmation of the sale in their cross bill.
The provisions already quoted, and especially the *69 direction that tbe executor should faithfully execute the will, conferred upon him an implied power to make the sale. The principle is firmly established, and well sustained by the highest authority, that where a testator directs his estate to be disposed of for certain purposes without declaring by whom the sale is to be made, and the proceeds are to be distributed by the executor, the power to sell is vested in him by implication: 1 Wil. on Ex’rs., 413 marg.; 2 Redf., on Wills., 124; 1 Sugd. on Pow.; 13 Law Lit., 136 m. See also Gee v. Graves, 2 Head, 239. In the case before us the power to sell is not expressly given, but as the real and personal estate are to be equally distributed into nine parts, and it is manifest that this could not be done without a sale of the land and slaves, the power to sell necessarily results. This construction is aided by the express direction that the executor shall faithfully execute the will, which he could not do without a sale for distribution. Having the power to do so under the will, and without the aid of any court, the proceedings in the County Coxirt, although unnecessary, can not be entirely disregarded. The sale of the slaves was not void because effected through the aid of the County Court. Notes were executed for the purchase money, possession delivered, and no effort made by Queener to be relieved of his purchase until nearly four years after the sale, and not until after judgments were taken upon the sale notes, and the slave purchased by him had been emancipated. Nor is the sale of the land void because made through the agency of the County Court and *70 its clerk. The executor bad full power to make tbe sale; and although no deed was executed, a report of sale was made to the County Court, and all the adult parties, but Queener, express- a willingness that the same shall be confirmed, or completed, by a decree of this court. As a trustee, the executor might, in the first instance, have invoked the aid and direction of a court of equity to execute the trust; and as he and the purchasers ask in their pleadings of record that the sale already made shall be confirmed, why may this not be done when it is desired by all the parties, except Queener and wife, when the sale was made in good faith, and is to the interest of the minors, and when Mrs. Queener and the legatees have no direct interest under the will in the land itself, but only in the proceeds of the sale to be made by the executor for distribution? Among other well known maxims, it is declared that equity looks upon that as done which ought to be done, and desires to prevent circuity of action and a multiplicity of suits. All the parties are before the court, and as the purchasers reposed for several years under a full conviction as to the security of their titles, and considered themselves as acting under the will, it would be inequitable to disturb sales which the executor had authority to make without the aid of. a court merely because he made, them through its instrumentality.
Although this court does not fully apprové the reasons which governed the action of the Chancellor, yet the results attained in his decree^ pronounced 24th May, 1869, on the petition for rehearing are substan *71 tially correct, with the exception tbat he should have ordered an account and final settlement as prayed for in the bill of Queener and wife. It is stated in the joint answer of the. executor and Perry Trew, that the amount of the judgment against Queener will not very greatly exceed the distributive share of his wife, and is alleged in the bill of Queener and wife that said share will amount- to more than the two notes executed by him in consideration of the purchase of the negro, and both parties appear to be willing that the one shall be set off against the other, so far as this can be done. There being no outstanding debts against the estate, it is unnecessary to enforce the collection of the notes until after an account. Let a decree, therefore, be entered affirming the Chancellor’s said decree as herein modified, and declaring the validity of the sales of the slaves, and the liability of the several purchasers for the purchase money agreed to be paid by them, and confirming the sale of the lands, but retaining a lien for the purchase money, and let the cause be remanded to the Chancery Court at Athens, to the end that an account may be taken -between the executor and all the parties interested under the will, so that the “distributive share” of each may be ascertained and its payment directed — the distributive shares of the purchasers of the lands and slaves to be applied, so far as they will go, towards the payment of. the purchase money which they respectively agreed to pay.
One-half the costs of these causes in this court will be paid by Queener, and the other half equally *72 by William Trew as executor, and by Warren Trew and Perry Trew.
A petition for a rehearing was filed in this cause, and the attention of the court was called to the case of Johnson v. Johnson, 2 Heis., 521. The petition was dismissed — NicholsoN, C. J., delivering the opinion of the Court.
The petition for rehearing in this cause is based upon the assumption that there is a conflict in the law as held in this case and as announced in the case of Johnson v. Johnson, decided at Nashville, and reported in 2 Heis., 521. The opinion in the present case was prepared before the report of the case of Johnson v. Johnson was seen, and therefore no reference was made to it, especially as that case turned upon a different state of facts. In that case we held that as the purchaser of the slaves was not shown to have taken possession of and held the slaves as his own property, the title had not vested in him, upon the ground, as was then held, that as a general rule the sale is not complete as to slaves until confirmation thereof, and that delivery alone was not sufficient to vest the title. But no dissent was expressed in that case to the holding of the court in the case of Polk v. Pledge, 5 Col., 384, upon the special facts of that case. That case fully sustains the conclusion already announced in the case now before us. That conclusion is in no respect in con *73 flict with the decision in the case of Johnson v. Johnson.
To avoid any misapprehension on the subject, however, we have deemed it proper to amend the opinion heretofore given in this case, so as to show more distinctly the grounds on which we hold that the ownership of the slave had been assumed by Queener, and that therefore the loss by emancipation must fall on him. The result to which we arrived is in no way changed by this amendment of the former opinion.
The petition therefore is dismissed.